IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHANE ENGLAND,

Plaintiff,

vs.                                    Case No. 11-2362-JTM

TOBY RAY COX, *and*
PPC TRANSPORTATION COMPANY,
    a Delaware Corporation,

Defendants.

MEMORANDUM AND ORDER

On May 28, 2010, plaintiff Shane England was riding aboard a locomotive engine traveling

north on a Union Pacific Railroad mainline track when it struck a stopped semi truck trailer. The

truck was driven by Cox, an employee of PPC Transportation, acting in the scope of his employment.

Cox was driving his truck east on Main Street in Neodesha, Kansas. Traveling in this direction, Main

Street first crosses the tracks of the Union Pacific Railroad (UP), and then the tracks of the South

Kansas & Oklahoma Railroad (SKO). Cox had crossed the UP tracks but failed to clear them

because  the car ahead of him stopped at the SKO tracks.

England has moved for summary judgment, seeking a determination that the defendants were

negligent, and that that negligence was the sole cause of the accident. Specifically, England argues

that Cox was negligent per se by violating K.S.A. 8-1584.

That statute provides:

**Restrictions on driving into intersection or crosswalk or onto railroad grade
crossing.** No driver shall enter an intersection or a marked crosswalk or drive onto
any railroad grade crossing unless there is sufficient space on the other side of the
intersection, crosswalk or railroad grade crossing to accommodate the vehicle he or

she is operating without obstructing the passage of other vehicles, pedestrians or railroad trains notwithstanding any traffic-control signal indication to proceed.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988).  The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

2

It is uncontroverted that, at the time of the subject collision, Cox was subject to K.S.A. § 8-1584. Cox acknowledged in his deposition that, when he entered the subject crossing, there was insufficient space on the other side to accommodate the tractor-trailer.

In their response, the defendants attempt to controvert this fact by citing another portion of Cox's deposition, where he agreed  with the question proposed by counsel that

> [t]here was no indication that there would be anything ahead of you that was going to impede your ability to go forward ... on Main Street ... until the cross bar came down on the second crossing [a]nd the couple in front of you stopped  and you had to stop behind them."

where he stated that when he entered the crossing, the way ahead appeared clear.

Cox agreed that it is not safe for a driver to enter a crossing until there is enough clear road on the other side of the crossing for the entirety of the driver's vehicle.

Defendant Cox failed to comply with K.S.A. § 8-1584 when he entered the subject crossing. The sole cause of the collision was that the trailer being hauled by defendant Cox was hanging over the rails.

It is uncontroverted that neither the conduct of England or the train engineer contributed to the collision.

The plaintiff contends that the UP and SKO crossings were both evaluated and equipped with gates, lights and warning devices under the provisions of the Federal Aid and Federal Highway Acts.[1]

---

[1] Also before the court is the defendants' Motion for Leave to File a Surreply (Dkt. 42), on the ostensible grounds that England's Reply Brief (Dkt. 35) raises "several new issues," cites new exhibits, and "argues that the opinions of [its expert] are inadmissible, irrelevant, misleading, and prejudicial." Leave to submit a surreply is denied. The arguments presented in the Reply are all clearly framed in the Motion (Dkt. 29), Memorandum in Support (Dkt. 30) and Plaintiff's Response (Dkt. 32). The new exhibits referenced in the Reply play no decisive role in the court's Memorandum and Order. As this court has repeatedly stressed, surreplies are disfavored, and are allowed only in the presence of "exceptional circumstances compelling the filing of such a pleading." *IMC Chemicals v. Niro*, 95 F.Supp.2d 1198, 1214 (D.Kan.2000). *See also ANR Pipeline v. Lafaver*, 76 F.Supp. 1142, 1150 (D.Kan.1999). Defendant's Motion for Leave falls far short of this high standard.

*Conclusions of Law*

England seeks summary judgment that (a) Cox was negligent *per se* by violating K.S.A. §
8-1584, (b) PPC Transportation is liable for Cox's actions under the doctrine of *respondeat superior*,
(c) Cox and PPC cannot compare the fault for the design of the crossings under state law, because
the Federal Railroad Safey Act (FRSA) Design Standards preempt state negligence law. In their
Response, the defendants challenge the first and last points, arguing that the doctrine of negligence
*per se* does not apply to § 8-1584 and that in any event Cox did not violate the terms of the statute,
and that no federal preemption exists.


*Negligence* **per se**

The defendants argue that negligence *per se* has no application, citing *Dietz v. Atchison,
Topeka and Santa Fe Ry. Co.*, 16 Kan.App.2d 342, 823 P.2d 810 (Kan.App. 1991). In *Dietz*, the
Court of Appeals considered the issue of negligence per se in the context of a state law governing
the conduct of hazardous materials carriers at railroad crossings. The court quoted the Kansas
Supreme Court's observation that negligence *per se* requires the finding that the legislature intended
a private right of action:

> "[V]iolation of a statute alone does not establish negligence *per se*. The [party
> alleging negligence *per se*] must also establish that an individual right of action for
> injury arising out of the violation was intended by the legislature. Statutes enacted to
> protect the public, therefore, do not create a duty to individuals injured as a result of
> a statutory violation.

> "Generally, the test of whether an individual right of action exists for
> violation of a statute is whether the legislature intended to give such a right. In the
> absence of express provisions, the legislative intent to grant or withhold such a right
> is determined primarily from the language of the statute. The nature of the evil sought
> to be remedied and the purpose the statute was intended to accomplish may also be
> taken into consideration."

*Dietz*, 823 P.2d at 345 (quoting, but omitting citations, from *Kansas State Bank & Trust Co. v.
Specialized Transp. Serv.*, 249 Kan. 348,  370, 819 P.2d 587 (1991)). Further, the court also
observed that "'[a] statute which does not purport to establish civil liability but merely makes

provision to secure the safety and welfare of the public does not establish civil liability.'" *Id.*, (quoting *Schlobohm v. United Parcel Service, Inc.*, 248 Kan. 122, 125, 804 P.2d 978 (1991)).

In his Reply, England first argues that even without negligence *per se*, Cox should be deemed negligent under the common law based on his violation of the statute. (Dkt. 35, at 40). Next, he recognizes the holding in *Dietz*, but "submits ... that this holding has been taken far out of context, not only by defendant, but by Kansas courts that have applied the holding indiscriminately." (*Id.*) Finally, he argues that a failure to apply negligence *per se* would be inconsistent with typical instructions authorized to be given in Kansas. (Dkt. 35, at 44).

The court find that plaintiff may properly raise the issue of negligence *per se*. "Interpretation of a statute is a question of law," *Dietz*, 823 P.2d at 814 (citing *NCAA v. Kansas Dept. of Revenue*, 245 Kan. 553, 557, 781 P.2d 726 (1989), and this court determines that § 8-1584 was not intended "to secure the safety and welfare of the public ... at large," *Schlobohm* 248 Kan. at 127, but rather a particular class of individuals, namely individuals in the proximity of specific railroad crossings at the time of the alleged violation. *See Skaer v. Moore*, No. 94-1287, 1995 WL 643830, *3 (D. Kan. 1995) (recognizing that negligence *per se* may arise under the Kansas Uniform Traffic Act for "claims of substandard driving which create a specific risk toward other persons in the immediate vicinity of the driver's present location"). *See also Burns v. Benedict*, 827 F.Supp. 1545 (D. Kan. 1993) (concluding, after a bench trial, that a driver was negligent *per se* for failing to yield the right of way, as required by K.S.A. § 8-1523(c)).

Ordinarily, Kansas law discourages the resolution of questions of negligence by summary judgment. *See Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d 847 (2008). The Pattern Instructions of Kansas include instructions to be given to the jury for its determination as to "whether any of the following rules apply" and "whether any rules have been violated," PIK, § 121.01, and specifically include instructions on the duties which arise from various traffic offenses. PIK § 121.09. In most cases, a court should decline to resolve the case by summary judgment and let the trier of fact resolve the issue of negligence *per se*. *See Patterson v. Dahlsten Truck Line*, 130 F.Supp.2d 1228, 1235 (D.

Kan. 2000) (finding that material questions of fact precluded an award of summary judgment on the issue of negligence *per se*); *Jackson v. Henderson*, No 02-2480-KHV, 2004 WL 48907, *4 (D. Kan. 2004) (denying summary judgment on claims of negligence *per se* for violation of traffic statutes).

But this is simply the *general* rule, and the court finds that summary judgment may properly issue in the present action. The uncontroverted facts presented here demonstrate that Cox was negligent *per se* in the collision. Attempting to respond to Cox's concessions in his deposition, the defendants cite Cox's additional response to a leading question from his counsel, to the effect that he could not see any impediment ahead of him at the time he started onto the UP crossing. But the statute governing the passage of railroad crossings does not require simply *apparent* or *contingent* or *possible* clearance. It imposes the duty of having *actual* clearance on the other side of the railroad crossings; it imposes the duty to avoid entering the crossing unless clearance is assured. Cox's violation of this duty was the sole proximate cause of the collision.

At various points in his Response, Cox and PPC present some factual assertions as grounds for denying the plaintiff's motion, but none of these is grounded on admissible evidence. For example, the defendants rely in particular on an unsworn expert report by Dr. John C. Glennon. England raises several challenges to the content of Glennon's opinion, but for present purposes it is sufficient to note that the unsworn report is not admissible evidence, and thus is not sufficient grounds for contesting a motion for summary judgment under D.Kan.R. 56.1(d).

Similarly, the defendants argue that "Cox had no way to anticipate the design of the crossing." (Resp. at 5, 7). Again, however, the statute creates the duty to avoid entering any crossing unless it can be done safely. Prior knowledge of the design of the crossing is not relevant. Similarly, while the defendants stress that Cox was not cited by the police after the accident, the opinion of the officer present at the scene (conducting his first investigation of a truck-train collision) is not relevant or controlling as to the court's determination here.

*Preemption*

If FRSA standards cover a subject, state regulatory or common law negligence standards are preempted by the federal standards. *CSX Trans., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *Norfolk Southern R. Co. v. Shanklin*, 529 U.S. 344, 352 (2000). That is, when the Secretary of Transportation adopts a regulation covering a given subject matter, that federal regulation preempts state law. *Easterwood*, 507 U.S. 670-71, 674. The Court in *Easterwood* recognized the federal regulation of railroad crossings:

> FRSA was enacted in 1970 "to promote safety in all areas of railroad operations and to reduce rail-road-related accidents, and to reduce deaths and injuries to persons...." 45 U.S.C. § 421. To aid in the achievement of these goals, the Act specifically directs the Secretary of Transportation to study and develop solutions to safety problems posed by grade crossings. § 433.

*Easterwood*, 507 U.S. at 661-62.

Acting through the Federal Highway Administration (FHWA), the Secretary of Transportation has promulgated regulations addressing railroad crossing improvements. *Shanklin*, 529 U.S. at 348. Accordingly, "the federal standard for adequacy applies to the crossing improvement and 'substantially subsume[s] the subject matter of the relevant state law.'" *Id*. at 356 (quoting *Easterwood*, 507 U.S. at 664).

In exchange for federal funding, the Highway Safety Act (HSA) requires that states "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). Railroad crossings which receive funds under the HSA — which includes both the UP and SKO crossings involved in this action — must be approved by the FHWA.

However, the defendants argue that no preemption exists under *Easterwood*, citing language from that decision indicating that preemption exists only if the federal regulation "covers" the same subject matter as relevant state law, meaning more than a mere "touching upon" or "relating to." 507 U.S. at 664. The FHSA does not preempt state negligence law, the defendants argue, because it does

7

not directly address the specific design flaw they identify, namely the minimum distance between grade crossings. (Dkt. 32, at 9). The court finds that the strong preemption recognized in *Easterwood* cannot be so easily avoided.

First, the defendants have submitted no admissible evidence showing that the crossings were defective merely because of the distance between the crossings. To the extent that defendants would argue that the signaling devices of the crossing were defective, this is precisely the subject of FHWA review and approval, and thus falls squarely within the exclusive federal regulatory scheme. In any event, defective crossing claims are preempted by federal regulation regardless of the particular language used by a claimant. *See Missouri Pacific R. Co. v. Limmer*, 299 S.W.3d 78, 92 (Tex. 2009) (finding claim of obstructed view of railroad crossing was "simply a restatement" of a claim for inadequate crossing warning, and "[a]s such, it is preempted").

IT IS ACCORDINGLY ORDERED this 6th day of August, 2012, that the court grants the plaintiff's Motion for Summary Judgment (Dkt. 29) for the reasons provided herein; defendants' Motion for Leave (Dkt. 42) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE